UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PRINCESS JOHNSON, ) | CASE NO. 1:17CV848 |
| ) | |
| Plaintiff, ) | |
| ) | JUDGE DONALD C. NUGENT |
| v. ) | Magistrate Judge George J. Limbert |
| ) | |
| NANCY A. BERRYHILL[1], ) | |
| ACTING COMMISSIONER OF SOCIAL ) | REPORT AND RECOMMENDATION |
| SECURITY ADMINISTRATION, ) | OF MAGISTRATE JUDGE |
| ) | |
| Defendant. ) | |

Plaintiff Princess Johnson ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her application for Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, Plaintiff asserts that substantial evidence does not support the finding of the administrative law judge ("ALJ") that she could perform her past relevant work at a light work level when the total limiting effects of her impairments and pain limit her to sedentary work. ECF Dkt. #13. She also challenges the ALJ's credibility deterimination and treatment of physician opinions. *Id.* For the following reasons, the undersigned recommends that the Court AFFIRM the decision of the ALJ and dismiss the instant case in its entirety with prejudice.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed her most recent application for SSI on August 23, 2013. ECF Dkt. #11 ("Tr.") at 75.[2] She alleged disability beginning December 31, 2004 due to emphysema, chronic obstructive pulmonary disease ("COPD"), carpal tunnel syndrome ("CTS") and arthritis. *Id.* at 127, 151. The Social Security Administration ("SSA") denied her application initially and upon reconsideration.

---

[1]On January 20, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

*Id.* at 87-88, 92-99. Plaintiff requested a hearing before an ALJ, and the hearing was held on September 30, 2015. *Id*. at 23, 100-101.

On January 28, 2016, the ALJ issued a decision denying Plaintiff's application for SSI. Tr. at 7-19. On April 20, 2017, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on August 18, 2017 and Defendant filed her merits brief on October 17, 2017. ECF Dkt. #s 13, 15.

**II.     RELEVANT MEDICAL AND TESTIMONIAL EVIDENCE**

    **A.     Relevant Medical Evidence**

On June 28, 2013, Plaintiff presented to establish care with Dr. Schroeder at Metrohealth and she weighed 257 pounds at a height of 5'2". Tr. at 211, 257. She requested a refill of her blood pressure and COPD medications. *Id*. She complained of depression, numbness in her bilateral hands, arthritis in her bilateral feet for which she was receiving shots for heel spurs, but she complained that it was causing bumps on the tops of her feet. *Id.* Physical examination revealed an appropriate mood and affect, normal respiratory rate, with no rhonchi, rales or wheezing. *Id.* at 213. She was diagnosed with COPD, tobacco use disorder, unspecified essential hypertension ("UEH"), arthritis of the first metatarsophalangeal joint, cervical dysplasia, and paresthesias. *Id*. at 215.

On July 26, 2013, Plaintiff presented for a pulmonary function test which showed mild restrictive ventilatory impairment with gas trapping without hyperinflation on lung volume testing, no significant response to bronchodilator therapy, and reduced diffusion capacity. Tr. at 205, 250. Plaintiff was advised to quit smoking. *Id.* at 204. An x-ray of her feet showed degenerative arthropathy and calcaneal enthesophytes(spurs). *Id.* at 220, 265.

August 7, 2013 notes from Dr. Schroeder indicate that she presented for follow up regarding her blood work and complaining that the prescription for Lisonopril did not make it to her pharmacy. ECF Dkt. #11 at 199, 248. She complained of bilateral paresthesias and was unable to purchase the cock-up splints that were recommended. *Id.* She reported that she had an EMG in the past which showed bilateral CTS. *Id.* She also indicated that she used her Albuterol rescue inhaler three times per day and she still had shortness of breath and wheezing despite using Symbicort and

Spiriva. *Id*. Plaintiff also complained of bilateral foot and ankle pain, and x-rays showed spurring of achilles and plantar surface. *Id.*

Physical examination revealed that Plaintiff was 259 pounds at a height of 5'3" and her body mass index ("BMI") was 45.89. ECF Dkt. #11 at 200. Her respiratory rate was normal, she had unlabored breathing and no rhonchi, rales or wheezing. *Id*. at 201. She was tender to palpation over the plantar fascia insertion site and she was diagnosed with hyperlipidemia, UEH, COPD, paresthesias, contact dermatitis, and plantar fasciitis. *Id*. She was referred for pulmonary, podiatry and orthopedic services. *Id.*

Treatment notes show that on September 6, 2013, Plaintiff presented to Dr. Schroeder for follow up regarding her heel spur pain. Tr. at 242. It was noted that Plaintiff did not follow up with podiatry and she was requesting something for her pain as she had tried conventional treatments such as ice, heel cups, a night brace, exercises, and new shoes. *Id*. Plaintiff further complained of continued shortness of breath, but it was noted that she did not follow up with pulmonary. *Id*. She further complained of tingling hand pain, but did not follow up with orthopedics. *Id*. It was noted that Plaintiff ambulated with a cane. *Id*. at 243.

After a physical examination, Plaintiff was diagnosed with UEH, COPD, and plantar fasciitis. Tr. at 243. Her medications were refilled, she was given an injection for her plantar fasciitis, and she was scheduled for podiatry and orthopedics. *Id*.

On October 17, 2013, Plaintiff presented to Dr. Bradford for a consultative examination. Tr. at 227. Dr. Bradford noted that Plaintiff reported that she had emphysema, she may have CTS as her hands get numb and her fingers lock up, she could walk twenty minutes, she had trouble lifting over two pounds, and she had trouble opening jars. *Id*. Plaintiff also reported that she may have heel spurs that cause her pain and to wobble when she walked. *Id*.

Physical examination noted that Plaintiff was 5'3" tall and weighed 264 pounds, with a 46.11 BMI. Tr. at 229. Plaintiff's respiratory examination was normal, she had a normal gait and posture, and full range of motion in her upper and lower extremities. *Id*. at 229-230. Dr. Bradford performed the manual muscle testing and all results were normal, including finger abductors, foot

plantarflexors, grasp, and manipulation. *Id*. at 224. She further noted that Plaintiff had no muscle spasms or muscle atrophy and normal ranges of motion. *Id.* at 225-226.

Based upon her examination and Plaintiff's reports, Dr. Bradford opined that Plaintiff could walk for 20 minutes and should be limited to sedentary work. Tr. at 230. She noted that Plaintiff recently began receiving medical care and was diagnosed with emphysema and placed on inhalers. *Id*. She further noted that Plaintiff has heel spurs, her hands lock as per her report, she has trouble opening jars, she can only lift two pounds, and she has to undergo further testing for CTS. *Id*.

Dr. Schroeder's February 19, 2014 treatment notes show that Plaintiff presented for follow up and refills of her blood pressure medications, and inhalers. Tr. at 274. She complained of itching and foot and hand pain and it was noted that she did not follow up with podiatry or the orthopedic referrals. *Id*. She again requested such referrals, which were given. *Id.* Physical examination showed normal findings but for erythematous patches with blisters on the soles of her feet. *Id.* at 275. She was diagnosed with COPD, urticaria, UEH, cervical dysplasia, tinea pedis, plantar fasciitis, contact dermatitis and eczema, and allergic rhinitis. *Id*.

March 24, 2014 treatment notes showed that Plaintiff presented for follow up and refills, indicating that she was getting relief from itching and hives, but she sought referral to an allergist, which was given. Tr. at 284. Physical examination was normal. *Id*.

Plaintiff also presented to Dr. Grady, a podiatrist, on March 24, 2014 for her heel spurs and arthritis. Tr. at 290. Upon physical examination, Dr. Grady diagnosed Plaintiff with plantar fasciitis, midfoot arthritis, and suspected ganglion cysts on her feet. *Id*. She provided Plaintiff with exercise information for the plantar fasciitis, instructed Plaintiff to ice her feet and stretch them, and she prescribed medication for Plaintiff's heels and feet. *Id*.

On September 17, 2014, Plaintiff presented to Dr. Griggs at Metrohealth for complaints of sharp, shooting pain in her left buttocks with radiation down the back of her thigh, leg and ankle. Tr. at 322. She also described numbness and tingling in her left lower extremity and had taken over the counter medications, but to no avail. *Id*. Upon examination, Plaintiff weighed 265 pounds at a height of 5'3", her skin had no rashes or lesions, she had good breath sounds, her extremities were normal, and she had left sacroiliac tenderness with palpation. *Id*. She was diagnosed with left-sided

sciatica and given a Toradol injection, and she was diagnosed with COPD, UEH, allergic rhinitis and Vitamin D deficiency. *Id.* She was also prescribed Norco tablets for her sciatica. *Id*. at 325.

Treatment notes show that on October 2, 2014, Plaintiff presented to Dr. Griggs for follow up of her sciatica and reported that she was feeling good with no further problems. Tr. at 349. She complained of sinus pressure, congestions, coughing and chest tightness. *Id.* Upon physical examination, she was diagnosed with acute bronchitis, COPD, UEH, and allergic rhinitis. *Id*. at 351. She was prescribed medication for the bronchitis and x-rays were ordered. *Id.* Chest x-rays showed no significant interval change, no pleural effusions, but minor spurring involving the mid-dorsal spine was noted. *Id*. at 360.

Plaintiff presented to Dr. Griggs on March 19, 2015 for recurrent low back pain and refills of her medications. Tr. at 362. Physical examination was normal, but for decreased range of motion in the back. *Id*. at 363. Plaintiff's weight was 285 at a height of 5'3". *Id*. She was diagnosed with low back pain, COPD, UEH, limb pain, plantar fasciitis, midfoot arthritis, tinea pedis, contact dermatitis, and left-sided sciatica, *Id*. A consultation with pain management and rehabilitation was requested for her low back pain. *Id.*

On July 15, 2015, Plaintiff presented to Dr. Griggs for follow up and medication refills. Tr. at 371. Physical examination was normal, including Plaintiff's range of motion in her back, but a papular rash was noted on the lower 1/3 of Plaintiff's legs. *Id*. She was diagnosed with bug bites, COPD, UEH, contact dermatitis, Vitamin D deficiency, and left-sided sciatica. *Id*. at 373-374. She was referred to dermatology. *Id*. at 374.

On August 27, 2015, Plaintiff presented to Dr. Griggs for follow up, medication refills, and a request to complete disability forms. Tr. at 394. Her history of low back pain, hypertension, COPD and CTS were noted. *Id*. She was complaining of right flank pain. *Id*. Upon physical examination, Dr. Griggs noted that Plaintiff was 5'3" and weighed 276 pounds. *Id.* at 396. She found decreased range of motion in Plaintiff's back, with right-sided tenderness, but normal lungs, extremities and skin. *Id.* She diagnosed right flank pain, left-sided sciatica, contact dermatitis, UEH, COPD, and CTS. *Id*. at 397. She ordered x-rays for the right flank pain and a urinalysis. *Id.*

X-rays of the spine showed mild grade 1 anterolisthesis of L4 in relation to L5, facet hypertrophic changes at L4 and L5 and minimal endplate spurring. *Id*. at 401.

On August 27, 2015, Dr. Griggs also completed a medical source statement on behalf of Plaintiff. Tr. at 381-383. She indicated that she saw Plaintiff quarterly and began seeing her on September 3, 2014. *Id*. at 381. She diagnosed Plaintiff with low back pain and sciatica, COPD, hypertension, varicose veins and CTS. *Id*. She identified clinical findings as low back pain with radiation into the lower left extremity and numbness and tingling in the lower extremity. *Id.* She opined that Plaintiff could lift and carry ten pounds occasionally, and she could occasionally handle, grasp and finger objects, and could stand, walk and sit 15 minutes at a time up to one hour each per 8-hour workday. *Id.* at 382. Dr. Griggs also opined that Plaintiff would have to take unscheduled breaks every 15-20 minutes for a period of 30-45 minutes before returning to work. *Id*. She also predicted that Plaintiff's symptoms would be severe enough to interfere with her concentration and attention to perform even simple tasks more than 25% of an 8-hour workday. *Id.* Dr. Griggs further opined that Plaintiff would be absent 10-15 times per month due to her impairments due to pain and she would be limited by her COPD as well due to shortness of breath and wheezing with exertion. *Id.* She stated that Plaintiff's limitations began as of July 26, 2015. *Id.*

On September 4, 2015, Plaintiff presented to Dr. Portnow, a podiatrist, for heel pain in both feet. Tr. at 388. Upon physical examination, Dr. Portnow diagnosed plantar fasciitis, Baxter's neuritis, and heel spur syndrome. *Id*. at 389. He prescribed her a prefabricated static night splint and advised Plaintiff to perform 15-30 minutes of stretching. *Id*. He also dispensed a pair of heat-molded prefabricated devices that molded to Plaintiff's feet to reduce her plantar fasciitis pain. *I*d. He also gave her Bio-Freeze and topical creams. *Id.*

On January 27, 2016, Plaintiff presented to Dr. Griggs for neck pain and medication refills. Tr. at 409. Physical examination showed that Plaintiff had decreased range of motion in her cervical spine and tenderness with active movement, as well as decreased range of motion in her back. *Id.* at 411. X-rays were ordered and Plaintiff was prescribed Flexeril for her pain. *Id.* Cervical spine x-rays showed straightening of the normal cervical lordosis, a prominent endplate osteophyte along the inferior aspect of C5, and minimal narrowing of the left C5-C6 neural foramen. *Id.* at 413.

On February 26, 2016, Plaintiff presented to Dr. Griggs for follow up of her neck and back pain. Tr. at 405. Physical examination showed decreased range of motion in the neck and back and tender mid upper back with a palpable edema. *Id*. She was diagnosed with neck and low back pain without sciatica and given Voltaren and a Lidocaine patch. *Id.* at 407-408.

### B.      Relevant Testimonial Evidence

At the ALJ hearing, Plaintiff testified that she lived alone and was brought to the hearing by her son's father because she does not drive and never had a driver's license. Tr. at 27-28. She reported that she weighs 270 at a height of 5'3", had an 11th grade education, and she smokes. *Id*.

Plaintiff reported that she vacuums, washes dishes, and cleans the bathroom. Tr. at 29. She microwaves meals and grocery shops, but sometimes has difficulty washing herself because her hands start to hurt, which makes it hard to hold on to the soap. *Id*. at 30. She plays Candy Crush on her tablet and likes to read the newspaper and watch television. *Id*. She gets together with family and friends. *Id*. She wakes up at 7:00 a.m., takes her medication, washes up, fixes something to eat, and runs errands once a month and has her son and daughter-in-law take her to the store. *Id*. at 32.

When asked why the last time that she worked was in 2002, Plaintiff responded that her daughter wanted her to watch her grandchildren and would pay her, but it did not work because her daughter would not come to get the kids and then she did not want to pay her for watching them. Tr. at 32. She had worked at Brennan Maintenance in 2002 but did not stay there long because they went out of business. *Id*. at 33.

She explained that she was unable to work because of the pain in her hands, back and feet. Tr. at 35. She elaborated on those impairments and they discussed her COPD, varicose veins and blood pressure as well. *Id.* at 36-40. She opined that she could lift two pounds, she could stand for 10-15 minutes at a time, she could walk for 10-15 minutes before stopping, and she could sit for 15-20 minutes at a time. *Id*. at 42-43. Upon questioning from her counsel, Plaintiff indicated that she props up her feet to relieve her pain for 20 minutes, three to four times per day. *Id*. at 46. She opined that she could be on her feet for one hour total during an 8-hour workday and she had good days and bad days. *Id*. at 47. On a bad day, which occurs 5-6 times per month, Plaintiff reported

that it is hard to get out of bed, but she gets up and takes a long hot shower, takes her medicine, and gets back into bed. *Id*. at 47-48.

The ALJ then questioned the vocational expert ("VE"). Tr. at 48. She asked the VE to consider whether a hypothetical person could perform jobs with the same age and education as Plaintiff with an ability to lift and carry up to 10 pounds frequently and 20 pounds occasionally, who could sit, stand and walk for 6 hours each, with: occasional pushing and pulling with the upper extremities; occasional climbing of stairs and ramps, but no ladders, ropes or scaffolding; occasional balancing, stooping, kneeling, crouching and crawling; no exposure to concentrated levels of pulmonary irritants like fumes, dust, odors or gases; avoidance of temperature extremes and humidity; and no exposure to hazardous conditions such as unprotected heights or moving machinery. *Id.* at 49-50. The VE testified that such a hypothetical individual could perform Plaintiff's past work. *Id.* at 50.

The ALJ modified her hypothetical individual to include a sit/stand option every hour for 5 minutes at a time without leaving the work station. Tr. at 50. The VE testified that this hypothetical person could still perform Plaintiff's past relevant work. *Id*. However, when the ALJ changed the standing/walking requirements to only 2 hours out of an 8-hour day and sitting for 6 hours, the VE testified that this hypothetical individual could not perform Plaintiff's past work. *Id*. The VE indicated that other sedentary jobs would be available for this hypothetical individual. *Id*.

The ALJ asked whether the hypothetical individuals could perform Plaintiff's past work if she also required frequent absences of at least 3 times per month and the VE responded that no jobs would be available for such an individual. Tr. at 50-51.

### III.    SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

In her January 28, 2016 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 23, 2013, the application date, and she found that since that date, Plaintiff had the following severe impairments: COPD, degenerative disc disease ("DDD") of the lumbar spine, hypertension, obesity, and osteoarthritis of bilateral feet. Tr. at 12. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Subpart P, Appendix

1. *Id.* at 13-14. After considering the record, the ALJ found that Plaintiff had the RFC to perform light work with the following limitations: a sit/stand option every hour for 5 minutes; occasional pushing and pulling with bilateral upper extremities; occasional climbing of stairs and ramps, but no climbing of ladders, ropes or scaffolds; balancing and occasional stooping, kneeling, crawling and crouching; no concentrated exposure to pulmonary irritants like fumes, odors, dust, or gases; and no concentrated exposure to extreme temperatures; humidity, unprotected heights, or moving machinery. *Id*. at 14.

Based upon Plaintiff's age, education, work experience, the RFC and the VE's testimony, the ALJ determined that Plaintiff could perform her past relevant work as a housekeeper/cleaner Tr. at 18. In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, and she was not entitled to SSI. *Id.*

## IV. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

## VI.   LAW AND ANALYSIS

### A.    RFC

Plaintiff first asserts that the ALJ lacked substantial evidence with which to find that she could perform light work as opposed to sedentary work because the ALJ failed to consider the total

-10-

limiting effect of all of her impairments. ECF Dkt. #13 at 9-12. Plaintiff relies upon her testimony concerning the limitations of her impairments, objective medical findings, and the opinions of treating and examining physicians. *Id.*

A claimant's RFC is an assessment of the most that a claimant "can still do despite [his] limitations." 20 C.F.R. §§ 416.945(a)(1). An ALJ must consider all of a claimant's impairments and symptoms and the extent to which they are consistent with the objective medical evidence. 20 C.F.R. § 416.945(a)(2)(3). The claimant bears the responsibility of providing the evidence used to make a RFC finding. 20 C.F.R. §§ 416.945(a)(3). However, the RFC determination is one reserved for the ALJ. 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5. Social Security Ruling ("SSR") 96-8p provides guidance on assessing RFC in social security cases. SSR 96-8p. The Ruling states that the RFC assessment must identify the claimant's functional limitations and restrictions and assess his or her work-related abilities on a function-by-function basis. *Id.* Further, it states that the RFC assessment must be based on *all* of the relevant evidence in the record, including medical history, medical signs and lab findings, the effects of treatment, daily living activity reports, lay evidence, recorded observations, effects of symptoms, evidence from work attempts, the need for a structured living environment and work evaluations. *Id.*

In determining Plaintiff's RFC in the instant case, the ALJ considered the proper regulations and Social Security Rulings and the proper medical and non-medical evidence, including Plaintiff's symptoms, her daily living activities, the objective medical evidence, Plaintiff's treatments, medical source statements, and other relevant evidence. Tr. at 14-18. However, Plaintiff asserts that the ALJ failed to consider the total limiting effects of her impairments in combination. ECF Dkt. #13 at 9-11.

The undersigned recommends that the Court find no merit to Plaintiff's assertion because she points to no evidence demonstrating that the ALJ failed to consider the limiting effects of all of her impairments in combination. Further, in the ALJ's decision, she indicates that she does consider the total limiting effects of all of Plaintiff's impairments as she indicated that she considered the

-11-

evidence and she found that while Plaintiff's medically determinable **impairment<u>s</u>** (emphasis added), could reasonably be expected to cause the symptoms that Plaintiff alleged, Plaintiff's statements concerning the "intensity, persistence and limiting **effect<u>s</u>** (emphasis added) of these **symptom<u>s</u>** (emphasis added)" were not fully credible. Tr. at 15. Based upon this statement, and without evidence to the contrary, the undersigned recommends that the Court find that the ALJ did indeed consider the total limiting effects of all of Plaintiff's impairments in combination.

### B.    CREDIBILITY

Plaintiff also challenges the ALJ's credibility determination, asserting that substantial evidence does not support the ALJ's light work determination because her pain reasonably limited her to sedentary work. ECF Dkt. #13 at 9-11. She outlines the evidence that she believes supports her statements concerning the limiting effects of her pain and other symptoms, citing to her statements at the ALJ hearing, objective tests, and medical source statements and reports from treating and examining physicians. *Id*.

The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 404.1529, SSR 96–7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir.1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038–1039 (6th Cir.1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir.1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96–7p. *See* SSR 96–7p, 61 Fed.Reg. 34483, 34484–34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039–40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997).

In the instant case, the ALJ cited to the proper social security regulations and rulings in evaluating Plaintiff's credibility. Tr. at 15. The ALJ determined that while Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible. *Id*. The ALJ cited to Plaintiff's statements about her impairments and resulting limitations from her disability reports, her reports to her doctors, and her testimony at the ALJ hearing. *Id*. at 15-16. However, the ALJ then reviewed the pulmonary studies which showed only a mild restrictive ventilatory impairment, normal chest x-rays, and physical examinations indicating good breath sounds and no rhonchi, rales or wheezing, except once when Plaintiff had bronchitis. *Id*. The ALJ addressed Plaintiff's arthritis complaints, noting objective findings of DDD and diagnoses of sciatica and back pain. *Id*. at 16. However, the ALJ cited to Plaintiff's later reports that her back was feeling better, x-ray findings showing only mild degenerative changes, and the fact that Plaintiff had only conservative medical treatment such as medications and injections for her back pain. *Id.* As to her foot pain, the ALJ noted that Plaintiff treated with a podiatrist, who found no evidence of muscle weakness or atrophy, but he did find restricted dorsiflexion of the ankle joints and diagnosed

plantar fasciitis, for which he prescribed a night splint. *Id*. at 13. The ALJ noted that x-rays showed spurring and degenerative arthropathy, but Plaintiff failed to follow up with podiatry. *Id.* Moreover, the ALJ noted physical examinations showing that Plaintiff presented with a normal gait, normal ranges of motion for the most part, negative Romberg tests and mild foot x-ray findings. *Id.* at 13-14.

In addition, the ALJ noted Plaintiff's daily activities, which included the abilities to vacuum, grocery shop, and wash dishes. Tr. at 16. While these activities alone cannot totally negate Plaintiff's pain allegations and restrictions, these activities, combined with the mild objective medical findings and conservative medical treatment, constitute substantial evidence to support the ALJ's credibility analysis. The ALJ also noted the fact that Plaintiff did not leave her last job due to her impairments, but rather because the business closed. *Id.* While substantial evidence may exist to the contrary in the record, the standard of review is whether the ALJ applied the correct legal standards in her decision and whether substantial evidence supports the ALJ's credibility determination. Based upon the above, the undersigned recommends that the Court find that the ALJ in this case did apply the correct legal standards concerning credibility and substantial evidence supports her credibility determination.

### C. **PHYSICIAN OPINIONS**

In evaluating Plaintiff's RFC, the ALJ also weighed the opinions of the physicians who treated and examined Plaintiff and who reviewed her medical evidence of record. Plaintiff challenges the ALJ's weighing of the opinions of Dr. Griggs, her treating physician, and Dr. Bradford, an agency examining physician. ECF Dkt. #13 at 11-12. Plaintiff asserts that the ALJ erred in affording more weight to the opinions of nonexamining agency physicians and in finding that the severe limitations for Plaintiff opined by Drs. Griggs and Bradford were not supported by the objective medical evidence. *Id.* Plaintiff also asserts that the opinions of Dr. Griggs and Dr. Bradford supported her complaints of pain and limiting effects of her pain and impairments. ECF Dkt. #13 at 11-12.

Plaintiff is correct that generally, more weight is attributed to the opinions of treating and examining medical sources than to the opinions of non-examining medical sources. *See* 20 C.F.R. § 416.927(d)(1). However, an ALJ can attribute significant weight to the opinions of a

-14-

nonexamining state agency medical expert in some circumstances because nonexamining sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96–6p, 1996 WL 374180. The regulations require that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(f)(2)(ii). Moreover, an ALJ is not required to explain why she favored one examining opinion over another as the "good reasons" rule requiring an ALJ to explain the weight afforded a treating physician's opinion does not apply. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006).

Here, the ALJ articulated the weight that she gave to the opinion of Dr. Griggs, Plaintiff's treating physician, concerning Plaintiff's severe limitations in functioning. Tr. at 17. The ALJ explained that she attributed only partial weight to Dr. Griggs' medical source statement that Plaintiff could only occasionally lift and carry up to ten pounds, she could stand, walk and sit only one hour each in total over an 8-hour workday, she would need unscheduled breaks every 15-20 minutes for 30-45 minutes at a time, she would be off task more than 25% of a workday for even simple tasks, and she would be absent from work 10-15 times per month due to her pain. *Id.* The ALJ explained that objective medical evidence did not support Dr. Griggs' severe limitations and she cited to the pulmonary testing showing only a mild restrictive ventilatory impairment, a lack of a functional capacity evaluation to test Plaintiff's ability to lift, the x-ray of Plaintiff's back showing mild to minimal findings which did not support Dr. Griggs' sitting, standing or walking limitations, and the normal physical examination on the day of the medical source statement which revealed only a decreased range of motion in the back. *Id.* While the treating physician rule is not directly challenged by Plaintiff in this case, the undersigned recommends that the Court find that the ALJ clearly articulated good reasons for attributing less than controlling weight to Dr. Griggs' opinion and substantial evidence supported her determination to do so. The objective medical evidence cited by the ALJ supports her decision to discount Dr. Griggs' opinion.

The undersigned recommends that the Court also find that substantial evidence supports the ALJ's treatment of Dr. Bradford's opinion that Plaintiff should be limited to sedentary work. The ALJ attributed little weight to Dr. Bradford's opinion, finding that some of it was based upon Plaintiff's self-reports of her abilities rather than Dr. Bradford testing those abilities, like Plaintiff's reports that she could not open a jar, she could lift only two pounds, and she may have heel spurs. *Id.* The ALJ further reasoned that Dr. Bradford's physical examination of Plaintiff did not support her limitation because the examination showed that Plaintiff had normal strength, no edema or varicosities of the extremities, normal posture, normal gait and station, a negative Romberg's sign, and no use of mobility aids. *Id.* The ALJ also cited to Dr. Bradford's findings that Plaintiff had no muscle spasms or muscle atrophy, normal grasp, manipulation and fine coordination, and normal ranges of motion in the cervical spine, shoulders, hands, wrists, and lower extremities. *Id.* Based upon the ALJ's reasoning, the undersigned recommends that the Court find that the ALJ adequately explained her reasons for attributing little weight to Dr. Bradford's opinion and substantial evidence supports that determination.

Since the ALJ provided good reasons for affording less than controlling weight to Dr. Griggs' opinion, she was free to assign more weight to the opinion of the nonexamining physicians who found that Plaintiff could perform light work activity with some restrictions. Tr. at 16. The ALJ addressed Dr. Bradford's examining opinion and explained why she attributed only little weight to it, and also explained that the nonexamining opinions were consistent with the objective medical evidence and updated medical evidence since their 2014 opinions did not change the determination. *Id*. at 17. The ALJ then reviewed the medical evidence and nonmedical evidence, including Plaintiff's daily living activities, the opinions of Drs. Griggs and Bradford, the objective medical testing and examinations, which provide substantial evidence to support her light work determination for Plaintiff. Accordingly, the undersigned recommends that the Court find that substantial evidence supports the ALJ's decision to attribute more weight to the opinions of nonexamining agency physicians than to the opinions of Drs. Griggs and Bradford and to assign a light work determination to Plaintiff.

## **VII. CONCLUSION AND RECOMMENDATION**

For the following reasons, the undersigned recommends that the Court AFFIRM the decision of the ALJ and dismiss the instant case in its entirety with prejudice.

Date: June 6, 2018                  */s/George J. Limbert*
                                            GEORGE J. LIMBERT
                                            UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).